UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT FAZZIO,

        Plaintiff,

      v.                                          **DECISION AND ORDER**
                                                             17-CV-977S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

1.     Plaintiff Robert Fazzio brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB") under Titles II and XVI of the Act. (Docket No. 1). The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.     Plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA"), on May 16, 2013, and May 22, 2013, respectively. (R.[1] at 171, 178). Plaintiff alleged disability since January 23, 2007 due to compressed discs in the upper and lower back, a herniated disc in the upper back, depression, and hernia. (R. at 199). Plaintiff's applications were denied (R. at 87-88), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 124).

3.     On June 2, 2015, ALJ Stephen Cordovani held a hearing at which Plaintiff—assisted by counsel—appeared and testified. (R. at 42-86). Vocational Expert ("VE") Josiah Lee Pearson also appeared and testified at the hearing via telephone. Id. At the

---

[1] Citations to the underlying administrative record are designated as "R."

time of the hearing, Plaintiff was 42 years old (R. at 171), with an eighth-grade education (R. at 200) and past work experience as a roofer (R. at 201).

4. The ALJ considered the case *de novo* and, on August 14, 2015, issued a written decision denying Plaintiff's applications for benefits. (R. at 16-28). On July 31, 2017, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-4). Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on September 29, 2017. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 8, 13). Plaintiff filed a response on July 27, 2018 (Docket No. 15), at which time this Court took the matter under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's August 14, 2015 decision became the final decision of the Commissioner of Social Security on this matter when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful

4

activity since January 23, 2007[3]. (R. at 18). At step two, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine to be a severe impairment. Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following exceptions: "lift, carry, push and pull limited to no more than 15 pounds; occasional bending and twisting; and alternate sitting and standing every 30 minutes. [Plaintiff] can understand, remember and carry out simple instructions and tasks, with instruction to be provided orally." (R. at 19-26).

13. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 26). At step five, the ALJ found that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy. Id. Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 27).

14. Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly relied on "stale" medical opinion evidence. (Docket No. 8 at 9-11; Docket No. 15 at 1-3).

15. "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), aff'd, 652 Fed. App'x 25 (2d Cir. 2016). "A medical opinion may be stale if it does not account for the claimant's

---

[3] Plaintiff did work subsequent to his alleged onset date and earned income above substantial gainful activity in Q2 of 2014. (R. at 193-94). Plaintiff lost the job after four months, and the ALJ deemed it an unsuccessful work attempt, although the job loss was not due to Plaintiff's inability to perform the work. (R. at 18, 57).

5

deteriorating condition." Carney v. Berryhill, 2017 U.S. Dist. LEXIS 72784, *15, 2017 WL 2021529 (W.D.N.Y. 2017).

16. "However, a medical opinion is not stale simply based on its age. A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole." Reithel v. Comm'r of Soc. Sec., 330 F. Supp. 3d 904, 910, 2018 U.S. Dist. LEXIS 148531, *10 (W.D.N.Y. 2018); see Carney, 2017 U.S. Dist. LEXIS 72784, *18 ("Dr. Liu's opinion was not stale […] because it was consistent with Dr. Liu's clinical examination and with the record as a whole.")

17. Here, in evaluating Plaintiff's RFC, the ALJ gave greatest weight to medical opinions from 2007 and 2009[4]. (R. at 24-25). Plaintiff argues that the ALJ's reliance on these opinions is improper, because they "pre-date the ALJ's decision by roughly <u>nine</u> and <u>seven</u> years respectively," and because "the record does support some evidence that [Plaintiff's] condition worsened since March of 2009." (Docket No. 8 at 11) (emphasis in original). This argument is unavailing.

18. In April of 2007, Dr. Mitchell determined that Plaintiff could return to work after being injured on January 22, 2007, but restricted Plaintiff to "no lifting over 20 pounds for 2 weeks." (R. at 372). The ALJ gave this opinion significant weight, noting that "although it is less detailed and less well explained," it is "generally consistent with the opinion of Dr. DenHaese." (R. at 25). The ALJ also noted that Dr. Mitchell's opinion was less relevant to a determination of long-term disability or impairment, because the opinion was rendered proximate to Plaintiff's alleged onset injury. Id.

---

[4]The ALJ also gave great weight to a 2013 consultative psychiatric assessment, which found no medically determinable mental impairment. (R. at 25, 98-99). However, this finding is not challenged on appeal.

6

19. On July 10, 2007, Plaintiff was referred to Dr. Kaplan for consultation of his midthoracic discomfort. (R. at 263). Dr. Kaplan noted that Plaintiff had received no treatment for his January 22, 2007 lumbar injury and diagnosed thoracolumbar sprain and dysfunction. Id. The record indicates that Plaintiff "is on a temporary partial moderate disability for all occupations," and that Dr. Kaplan recommended a comprehensive spinal rehabilitation program "that should allow [Plaintiff] to return to work." (R. at 264).

20. At a follow-up visit on August 21, 2007, Dr. Kaplan noted that Plaintiff had recently returned to work as a roofer, working with restrictions, and recommended physical therapy. (R. at 265). Plaintiff returned to Dr. Kaplan on February 7, 2008. (R. at 266). Plaintiff reported that he had a lot of personal issues that prohibited him from follow-up care. Id. Plaintiff was not enrolled in a physical therapy program, denied any chiropractic care, and was managing his discomfort with over-the-counter ibuprofen and Tylenol. Id. Dr. Kaplan noted that Plaintiff had "a temporary partial disability to a moderate degree" and referred him to physical therapy. Id.

21. Plaintiff attended 7 physical therapy sessions in 2008 between February 14 and March 11 and, on March 13, 2008, reported a 30-40% improvement in his symptomology and denied pain medication. (R. at 267). Dr. Kaplan ordered an MRI and recommended that Plaintiff continue with physical therapy. Id. Plaintiff stopped attending physical therapy, however, and was discharged after failing to return phone calls to schedule further appointments. (R. at 259).

22. A May 5, 2008 magnetic resonance imaging scan ("MRI") of Plaintiff's lumbar spine showed no disc herniations or stenosis, but did show "a small degree of

bony hypertrophy […] with minimal borderline appearing disc bulges at L3-4 and L4-5" and a "small area of edema along a portion of the L4 vertebral body." (R. at 22, 269).

23. In an addendum to a report from February 23, 2009, Dr. DenHaese opined that Plaintiff had a mild to moderate level of disability and imposed work restrictions limiting Plaintiff to "no lifting greater than 15 lb., no repetitive bending, twisting motions, and no repetitive pulling motions." (R. at 366). The ALJ gave this opinion great weight because it was expressed in functional terms and consistent with the record as a whole, as well as consistent with Plaintiff's own testimony. (R. at 24-25).

24. On March 11, 2009, Plaintiff saw Dr. Pilly for consultation for low back pain. (R. at 362). Physical exam showed 5/5 strength throughout both upper and lower extremities, normal range of motion of the lumbar spine with no kyphotic or scoliotic deformity, and normal gait and station. (R. at 364). Dr. Pilly noted that Plaintiff was on temporary total disability and recommended physical therapy and epidural steroid injections. (R. at 365).

25. On September 29, 2009, Dr. Pilly opined that Plaintiff had L5-S1 disc herniation causing a bilateral S1 radiculopathy and thoracic disc herniation causing a thoracic radiculopathy. (R. at 303). Dr. Pilly noted that Plaintiff "is classified as a mild disability" and scheduled Plaintiff for epidural steroid injections. (R. at 303-04).

26. Dr. Pilly re-evaluated Plaintiff on March 9, 2010. (R. at 299). He noted that Plaintiff had failed to keep appointments for epidural steroid injections and now "adamantly declines" to undergo that form of treatment. (R. at 299-300). Dr. Pilly asked Plaintiff to undergo an electromyogram (EMG) and nerve conduction study, and indicated

8

that depending on the results of the study, he might refer Plaintiff to neurosurgery for consideration of a minimally invasive decompressive surgery. (R. at 300).

27. The EMG on May 27, 2010 revealed no abnormal findings and no evidence of acute bilateral lumbar radiculopathy. (R. at 294-296). However, the ALJ noted that the EMG "did not rule out a small fiber sensory radiculopathy" in the lower extremities. (R. at 23).

28. Plaintiff was re-evaluated on June 9, 2010, following the EMG study. (R. at 290). Plaintiff reported some improvement in symptoms with physical therapy, but refused chiropractic care. Id. Dr. Pilly noted a mild disability (25% temporary impairment), recommended physical therapy and massage therapy, and ordered an MRI. (R. at 291).

29. On June 15, 2010, Plaintiff's MRI showed no significant changes from the 2008 scan. (R. at 23, 292). Once again, Plaintiff had no disc herniations or stenosis, though he had "a tiny degree of edema […] which is similar to the previous exam," as well as "a minimal degree of some bony hypertrophy […] similar to the previous exam," and "borderline tiny bulges […] unchanged compared to the previous exam." (R. at 292).

30. On July 22, 2010, Plaintiff was evaluated by Dr. Siddiqui for complaints of back pain. Plaintiff stated that he continued to go to physical therapy, but that he had not attended in several weeks. (R. at 305). Plaintiff also claimed that "[h]e recently went to Virginia Beach and had been participating in physical activities there." Id. Dr. Siddiqui assessed a 25% disability and recommended medical massage therapy. (R. at 306).

31. Between 2010 and 2013, Plaintiff received no treatment for his allegedly disabling condition. (R. at 332). On June 6, 2013, Plaintiff presented to Dr. Vigna with complaints of low back pain, which he rated at a level of 7/10 that day. Id. Dr. Vigna's

notes indicate that Plaintiff described having "attempted to go back to work light duty" after his 2007 injury, but "no light duty was offered." Id. Plaintiff alleged that his back pain caused him to be functionally limited to walking about 2 blocks, standing for 30 minutes, and sitting for 45-60 minutes. Id.

32. Plaintiff reported that he "does not drive long distances and does not know how far he could drive with his low back pain." Id. Paradoxically, Plaintiff also claimed to be "trying to get into a tractor-trailer driving school as he feels he might be able to do this type of job as long as he does not need to load or unload trucks." Id. At the hearing, Plaintiff testified he did not attend tractor-trailer driving school because his driver's license was restricted for reasons unrelated to any disability or impairment. (R. at 58-59). Plaintiff also testified that a job driving a tractor trailer was "probably" something he would be able to do and stated, "maybe I'd be able to start a new career doing that where I'm just driving a truck back and forth to drop stuff off and bring it back." Id.

33. Dr. Vigna noted that x-rays taken that day—June 6, 2013—showed normal thoracic and lumbosacral spines with "well-preserved disc heights and no instability." (R. at 325-28). Dr. Vigna ordered updated MRI and EMG studies, recommended chiropractic treatment, and indicated that Plaintiff had a 66.66% temporary impairment for workers' compensation purposes. (R. at 334).

34. On July 25, 2013, Dr. Vigna noted that Plaintiff's recent MRI demonstrated a "small degree of early osteophyte development and edema involving […] the L3 and L4 vertebral bodies," and that (R. at 343) Plaintiff's June 27, 2013 EMG study had found no evidence of active denervation, but was "highly suggestive of a chronic right L5 radiculopathy." (R. at 340). Dr. Vigna also noted that Plaintiff had not attended

chiropractic treatment because his truck had broken down and referred him to a chiropractor located nearer Plaintiff's home. (R. at 342-43). Dr. Vigna again opined that Plaintiff had a 66.66% temporary impairment. (R. at 343).

35. The ALJ discussed the opinions of Drs. Pilly, Siddiqui, and Vigna, but noted they were rendered for Plaintiff's workers' compensation case. (R. at 21-25). The ALJ gave these opinions little weight because "they are not well explained nor expressed in functional terms," and because they were based on rules inapplicable to Social Security disability determinations. (R. at 25).

36. It is well settled that "a treating physician's opinion that an individual is disabled is not entitled to controlling weight, because the ultimate issue of disability is reserved for the Commissioner." Shields v. Comm'r of Soc. Sec., 2018 U.S. Dist. LEXIS 86678, *11, 2018 WL 2327665 (W.D.N.Y. 2018), citing Taylor v. Barnhart, 83 F. App'x 67, 70 (2d Cir. 2003) (holding that a treating physician's opinion that a claimant is "temporarily totally disabled is not entitled to any weight, since the ultimate issue of disability is reserved for the Commissioner").

37. Furthermore, "the ALJ correctly noted that the determination of disability in the context of a workers' compensation claim uses a different standard than the Social Security Act." Ackley v. Colvin, 2015 U.S. Dist. LEXIS 54554, *12, 2015 WL 1915133 (W.D.N.Y. 2015). Because of this difference in applicable standards and rules, "an opinion rendered for purposes of workers' compensation is not binding on the [Commissioner]." Rosado v. Shalala, 868 F. Supp. 471, 473 (E.D.N.Y. 1994), citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir.1984); see also Davies v. Astrue, 2010 U.S. Dist. LEXIS 70401, *13, 2010 WL 2777063 (N.D.N.Y. 2010) ("the ALJ properly discounted [a

treating physician's] opinions that Plaintiff was unable to work because they were rendered for a Workers' Compensation claim"), adopted by Davies v. Astrue, 2010 U.S. Dist. LEXIS 70418, 2010 WL 2777947. Accordingly, this Court finds no error in the ALJ's weighting of these opinions.

38. The ALJ also gave little weight to the opinion of Dr. Latona-Brzezinski, a chiropractor who opined that Plaintiff was 100% disabled. (R. at 25). Between January and April of 2014, Dr. Latona-Brzezinski completed various workers' compensation forms related to Plaintiff's chiropractic care and massage therapy. (R. at 393-415). Dr. Latona-Brzezinski's initial report, dated January 6, 2014, indicated that Plaintiff was currently working (R. at 399) and that Plaintiff had "severe muscle spasms in his mid/lower back and would greatly benefit from massage therapy in conjunction with chiropractic [care]." (R. at 401).

39. A progress report dated February 3, 2014 indicated there had been no changes in Plaintiff's injury, subjective complaints, or objective findings; nor were there any changes to the current treatment plan, which consisted of massage therapy that day. (R. at 409). The form also indicated Dr. Latona-Brzezinski's opinion that Plaintiff had a 100% temporary impairment, would not benefit from vocational rehabilitation, and was unable to return to work. Id. The only explanation given for these findings was that Plaintiff could not return to work because "pain preventing." Id. Dr. Latona-Brzezinski did not describe any functional limitations Plaintiff experienced, nor reference any diagnostic test results to support a finding of 100% disability. Id.

40. On February 5, 2014, Dr. Latona-Brzezinski requested authorization for six weeks of massage therapy, stating "[Plaintiff] has been progressing well with the

12

combination of massage therapy and chiropractic treatment. It would be in the best interest of the patient to continue with this treatment plan." (R. at 411).

41. On February 28, 2014, Dr. Latona-Brzezinski indicated there had been no changes in Plaintiff's injury status or treatment plan and again opined—without explanation or support—that Plaintiff had a 100% temporary impairment and could not return to work because "pain preventing." (R. at 412). Questions on the workers' compensation form that asked about Plaintiff's work status and whether he would benefit from vocational rehabilitation were left unanswered. Id.

42. The ALJ noted that "a chiropractor is not considered an acceptable [medical] source," and that Dr. Latona-Brzezinski's opinion was "conclusory and unexplained," "not expressed in functional terms," and was based on workers' compensation rules. (R. at 25). In addition, the ALJ found that Dr. Latona-Brzezinski's treatment notes were internally inconsistent, pointing out that the first report, which indicated Plaintiff was currently working (R. at 399-401), was "not substantially different" from subsequent reports that alleged Plaintiff was 100% disabled (R. at 409, 412). (R. at 25). For these reasons, the ALJ properly discounted Dr. Latona-Brzezinski's opinions.

43. The ALJ also considered Plaintiff's testimony regarding cessation of treatment for his allegedly disabling condition and Plaintiff's recent full-time work experience. (R. at 24-25). In addition to receiving no treatment between 2010 and 2013 (R. at 332), at the hearing on June 1, 2015, Plaintiff testified that he had not seen a doctor nor had he sought any form of treatment since the end of summer, 2014. (R. at 65-66). Since then, Plaintiff had managed his pain by using a heating pad, taking hot baths, and taking over-the-counter Ibuprofen. (R. at 64-65).

44. Plaintiff testified that he was hired through a temp agency as a parts inspector for fuel injection systems in 2014. (R. at 56-58). He stopped attending his massage therapy sessions after that, stating he "couldn't make it [to massage therapy] because [he] was working those days." (R. at 65). Hired on March 24, 2014 (R. at 193), Plaintiff worked full-time—four days a week, 10 hours each day—for approximately four months, performing a job that required him to stand at a machine for 2-3 hours at a time without breaks. (R. at 57-58, 62, 66-67). Plaintiff lost this job when the hiring company stopped working with his temp agency. (R. at 56-57).

45. In determining Plaintiff's RFC, the ALJ considered the entire record, including Plaintiff's treatment history, recent full-time work experience, and opinion evidence. (R. at 19-26). Nothing in the record indicates that the ALJ relied on opinions that were inconsistent with the record or that the ALJ erred in giving little weight to opinions rendered for workers' compensation purposes.

46. Moreover, despite Plaintiff's claim that "the record does support some evidence that [Plaintiff's] condition worsened since March of 2009," there is no indication that Plaintiff suffered from a clearly deteriorating condition at the time of the ALJ's decision. If anything, evidence that Plaintiff's allegedly disabling condition went untreated for years, together with Plaintiff's return to full-time work for several months in 2014 supports the opposite conclusion. Therefore, Plaintiff's contention that the ALJ relied on stale evidence is unpersuasive.

47. Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical and opinion evidence supporting the ALJ's determination that

Plaintiff is not disabled, and Plaintiff's aforementioned arguments are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:     January 25, 2019
              Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                           United States District Judge